THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PERKINS COIE, LLP,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>EPSILON GLOBAL ACTIVE VALUE FUND II, LTD., *et al.*,<br><br>　　　　　　Defendants. | CASE NO. C14-0271-JCC<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This matter was tried to the Court on October 15, 2015. The claims presented for adjudication were as follows:

　　(1)　Did Defendants[1] breach the parties' engagement agreement by failing to pay for services rendered?

　　(2)　Did Defendants' failure to pay constitute breach of an account stated?

　　(3)　Alternatively, are Defendants liable under a theory of quantum meruit?

　　(4)	Does this Court have personal jurisdiction over Defendants?

　　(5)	Did Perkins Coie violate the Rules of Professional Conduct (RPCs)?

　　(6)	Is Perkins Coie entitled to an award of attorney fees expended in this action?

---

[1] Any reference to "Defendants" in this order shall refer to all named defendants except Epsilon Global Active Value Fund II, Ltd. ("Active Value"). Active Value has been dismissed from this case. (Dkt. No. 42.)

FINDINGS OF FACT AND CONCLUSIONS OF
LAW
PAGE - 1

After bench trial and pursuant to Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

In March 2010, Epsilon Global Active Value Fund II, Ltd. ("Active Value"), Epsilon Global Master Fund II, LLP ("Master Fund"), Epsilon Investment Management, LLC ("Investment Management"), Epsilon Global Asset Management, Ltd. ("Global Management"), and Steve Stevanovich retained Perkins Coie to defend against a lawsuit filed by the Seattle City Employees' Retirement Fund (SCERS) ("the SCERS matter"). Stevanovich was named in the SCERS lawsuit personally and as director, manager, or president of each of the Epsilon entities.

On March 19, 2010, the parties entered into a written engagement agreement. The agreement contains the following relevant passages:

> The present engagement is limited to representation and advice concerning the referenced lawsuit. . . . Although [Perkins Coie] will [be] pleased to discuss with [Defendants] in the future any expansion of [Perkins Coie's] legal services on behalf of [Defendants], unless and until [Perkins Coie] confirm[s] in writing that [it is] expanding [its] representation, the scope of [the] engagement is strictly limited to this one matter.
>
> [Perkins Coie] understand[s] that [Epsilon's General Counsel Edmund Bergan] will be the designated client representative with whom [Perkins Coie is] authorized to communicate with respect to all clients, and that this is acceptable to both Epsilon and Mr. Stevanovich.
>
> It is [Perkins Coie's] understanding that, by signing this engagement letter, each of the clients agrees to be jointly and severally liable for payment of all fees and costs billed on the case, including accrued late charges, should one or more clients fail to make timely payment.
>
> Until advised otherwise, [Perkins Coie] will continue to understand that Epsilon and Mr. Stevanovich have a common purpose, a common goal, that they are in agreement on a common approach, and that each believes it will be in agreement with one another on what an acceptable resolution will be. [Perkins Coie] also understand[s] that Mr. Stevanovich is fully indemnified by Epsilon and that his legal fees and defense costs are going to be paid by the corporate entity (although he will remain personally liable if Epsilon does not make payment).

> This letter, along with the enclosed Information for Clients confirms the terms and conditions on which Perkins Coie will provide services. Unless otherwise agreed in writing, the terms of this letter and the enclosed Information for Clients also will apply to any additional matters that [Perkins Coie] agree[s] in the future to undertake at Epsilon's or Mr. Stevanovich's request. If this letter correctly sets forth our understanding, please sign and date a copy and promptly return the signed original to [Perkins Coie] together with Mr. Stevanovich's signed signature page.

The Information for Clients contained the following relevant terms:

> If we are required to bring an action or proceeding to collect fees or disbursements due us, we will also be entitled to recover certain fees and costs. These include, but are not limited to, our own outside attorneys' fees, expert witness fees, other costs of collection billed to us, and the value of legal services Perkins Coie's own attorneys perform in analyzing or prosecuting a collection action if such circumstances arise on your account.

> You consent to venue and jurisdiction wherever we have an office with attorneys who worked on your behalf.

Mr. Stevanovich signed the engagement agreement on behalf of all clients.

During the course of Perkins Coie's representation on the SCERS matter, SCERS exercised its supermajority ownership of Active Value and thereby took control of the entity. This created a conflict of interest prohibiting Perkins Coie from representing Active Value. Perkins Coie terminated its representation of Active Value in or around June 2010. Perkins Coie did not perform legal work for Active Value at any point thereafter.

The SCERS lawsuit resulted in dismissal of all claims against Defendants on September 28, 2010. After the case was dismissed, Perkins Coie continued to perform legal services on the SCERS matter when two related issues arose. These issues were (1) a public records request made to SCERS implicating Defendants' documents and (2) a request from SCERS to meet with Mr. Stevanovich to obtain information about various Epsilon entities. This work resulted in $22,015.45 in legal fees. This amount has not been paid as of this date.

In December 2010, Mr. Bergan reached out to Perkins Coie on behalf of Defendants, requesting that Perkins Coie advise them on a second matter. This matter was a clawback action against Defendants involving Petters Consulting ("the Petters matter"). Defendants sought

research assistance regarding a possible cross-claim against a fellow defendant, which would reduce Defendants' potential liability. Perkins Coie confirmed the scope of the new representation in writing by way of an email sent from Joseph McMillan, a Perkins Coie attorney, to Mr. Bergan and Jay Biagi. Mr. Biagi also provided legal representation to Defendants and acted as Defendants' agent. Perkins Coie began to perform research on the cross-claim issue.

On February 25, 2011, Mr. Stevanovich instructed Mr. Bergan that Perkins Coie should "sit tight" and refrain from performing further legal services until a third party had provided important information regarding the cross-claim. Mr. Bergan relayed this to Perkins Coie, who ceased to perform legal services for Defendants at that time.

Mr. Bergan and Mr. Biagi subsequently requested on Defendants' behalf that Perkins Coie provide additional legal services on the Petters matter. Defendants did not object to any work requested by Mr. Bergan or Mr. Biagi until the commencement of this litigation. This work resulted in $67,356.01 in legal fees. This amount has not been paid as of this date.

Defendants were billed monthly and never objected to any billings until this litigation was filed. As of trial, the outstanding sums in the SCERS and Petters matters have accrued $42,839.91 in late fees.

## II. CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332, because there is diversity among the parties and the amount in controversy exceeds $75,000. This Court has personal jurisdiction over Defendants by virtue of the Defendants' consent to jurisdiction in Washington State.

2. The engagement agreement is a valid and enforceable contract between Perkins Coie and Defendants. This contract includes the terms and provisions of the "Information for Clients."

3. The post-dismissal issues that arose in the SCERS matter were issues "concerning" the

SCERS lawsuit. Thus, the engagement agreement covers all the work performed in the SCERS matter.

4. The Petters matter constituted an "expansion of [Perkins Coie's] legal services on behalf of [Defendants]," and that expansion was "confirm[ed] in writing." Thus, the engagement agreement encompasses the Petters matter and all of the agreement's terms apply to the Petters matter.

5. Bergan had actual authority to act on behalf of Defendants. The engagement agreement encompasses all work authorized by Bergan.

6. Biagi had at least apparent authority to act on behalf of Defendants. The engagement agreement fact encompasses all work authorized by Biagi.

7. Because the engagement agreement covered all of the work at issue here, Perkins Coie did not commit a violation of the RPCs.

8. Defendants' failure to pay the outstanding amounts constitutes a breach of contract.

9. Defendants are liable to Perkins Coie for outstanding legal fees and late fees in the amount of $132,211.37.

10. Perkins Coie is entitled to its reasonable attorney fees and costs in pursuing this lawsuit.

It is so ORDERED.

DATED this 21 day of October 2015.

John C. Coughenour
UNITED STATES DISTRICT JUDGE